BLANCHE, Judge.
Plaintiff, Rosenthal and Rosenthal, Inc., filed suit for a deficiency judgment against defendants, Houma Town House Apartments, Inc., the maker of a promissory note, and Thomas R. Pruyn and C. S. Pruyn, Jr., the endorsers thereof. This note was secured by a second mortgage on apartments owned by the corporate defendant, against whom plaintiff had previously brought foreclosure proceedings and had the collateral seized and sold. The two individual defendants herein, hereinafter referred to collectively as “Pruyn,” were not made parties defendant in the execu-tory proceeding, but were served with notice of the seizure and sale. No appearance was made on behalf of the corporate defendant, and judgment by default was rendered against it. After answer was filed by Pruyn, plaintiff filed a rule for summary judgment. The matter was taken under advisement and the trial court granted summary judgment in favor of plaintiff and against Pruyn in the full sum of $29,583.15, together with interest thereon at the rate of eight percent per annum from September 26, 1967 (the date of default), until paid, plus fifteen percent attorney’s fees on the total amount of principal and interest due and owing, subject to a credit of $1,922.72 paid on September 13, 1967,[1] and for all costs of the *11 proceedings. From this judgment Pruyn perfected this devolutive appeal. Plaintiff answered the appeal urging that the judgment be amended so as to cast appellants liable in solido.
Appellants contend that there were genuine issues of material fact which precluded plaintiff’s right to a summary judgment. The first of these issues concerns the discrepancy between the attorney’s fees stipulated in the note and those provided for in the mortgage. The mortgage describes the note as stipulating attorney’s fees at ten percent of the amount due, whereas the note itself stipulates attorney’s fees at fifteen percent of the amount due. The presiding judge correctly disposed of this issue in the following manner:
“With reference to the disparity which exists in the attorney fees as between the note and the mortgage, the plaintiff alleges that if this suit were the executory proceeding, then probably the attorney fees provided for in the mortgage would have prevailed. The plaintiffs urge that this is a suit on the note alone and that the note is not attacked by any special defense and that therefore the attorney fees called for in the note should be given. Additionally, the plaintiff mentions the certificate which appears on the reverse side of the note, which certificate was executed by L. H. Rosenson, the Notary before whom the mortgage was executed, which certificate is made under the provisions of R.S. 13:4104 and reads as follows:
“ T hereby, certify, pursuant to R.S. 13:4104 that the stipulation for 10% attorneys fees on page three of the act of mortgage with which this note is identified is at variance with the stipulation for 15% attorney fees in this note; that such variance is due to clerical error; and that the correct amount of attorney’s fees is 15%.

L. H. Rosenson
Notary Public’
“R.S. 13:4104 provides as follows:
“ ‘The right to an order for executory process shall exist when there is a variance between a notarial act of mortgage and the note or notes issued in connection therewith, when such variance is due to a clerical error and the fact that such variance is so due is certified on the note or notes or on the act of mortgage, or both, over the official signature of the Notary before whom the mortgage was passed.
“Counsel for defendants urges that this statute should be interpreted to mean that if the clerical error was on the note, then the certification of the Notary must appear on the note, and if the error was on the mortgage, then the certification by the Notary must be on the mortgage. They further argue that since in the present case the claimed error occurred in the mortgage and the certification is on the note, that the certification does not meet the requirements of the statute. This Court does not interpret R.S. 13:4104 in that manner. This statute to the Court clearly indicates that the certificate relative to the variance may be placed on the note or notes or on the act of mortgage, or both. In this instance, the Court believes that the certification relative to the clerical error on the note is sufficient to satisfy the requirements of this particular statute.” (Written Reasons for Judgment, Record, pp. 22, 23)
Appellant’s second issue — relative to usury — is meritorious and requires amendment of the judgment of the trial court, although it does not present an issue of material fact so as to preclude rendition of summary judgment in plaintiff’s favor. The note sued upon stipulates the following with regard to interest:
“The maker obligates itself to pay, commencing August 19, 1965, and monthly thereafter, on the 19 [sic] day of each month, in thirty-six (36) consecutive monthly instalments, the first thirty-five *12 (35) instalments each in the amount of $416.67, plus interest at the rate of twelve (12%) per cent per annum from date until the maturity of each instalment, with the final instalment of $25,416.55, plus interest at the rate of twelve (12%) per cent per annum from date until maturity. It is agreed and understood that the maker shall pay interest at the rate of two (2%) per cent per month from the maturity of each instalment until paid.” (Record, p. 16, exhibit — emphasis added)
Appellants contend the aforementioned provision of the note relative to interest is usurious in that it provides for interest at a rate in excess of eight percent per annum, the maximum conventional interest provided by Louisiana Civil Code Article 2924. Plaintiff evidently recognized the usury problem, at least with regard to appellants as individuals, and sought in the petition for deficiency judgment to reduce the interest to eight percent per annum, as evidenced by paragraph 10 of the petition, which reads as follows:
“10.
“Petitioner shows that under the provisions of Civil Code Article 2924 of the State of Louisiana, as interpreted by the Supreme Court of Louisiana in the case of Osborne v. Mossler Acceptance Co., 214 La. 503, 38 So.2d 151, the interest herein sued on said note is reduced to eight (8%) per cent per annum from August 19, 1965, until paid.” (Record, p. 6)
The presiding judge accepted plaintiff’s contentions that the Osborne case permits reduction of the usurious interest to the maximum conventional rate of interest, as evidenced by the following excerpt from his Written Reasons for Judgment:
“Dealing first with the question of the interest rate provided for by the note, plaintiff contends that under the holding of the Supreme Court in Osborne v. Mossler Acceptance Company, 214 La. 503, 38 So.2d 151 and Article 2924 of the La. Civil Code the maximum legal rate of interest of 8% can be recovered in this instance, despite the provision in the note calling for interest at the rate of 12%. Article 2924, inter alia, provides as follows :
“ ‘The owner or discounter of any note or bond or other written evidence of debt for the payment of money[,] payable to order of [sic] bearer or by assignment, shall have the right to claim and recover the full amount of such note, bond or other written evidence of debt and all interest not beyond 8% per annum interest that may accrue thereon, not withstanding [sic] that the rate of interest or discount at which the same may be or may have been discounted has been beyond the rate of 8% per annum interest at [sic] discounts [sic]; but this provision shall not apply to the banking institutions of this State in operation under existing laws.
“ ‘The owner of any promissory note, bond or other written evidence of debt for the payment of money to order or bearer are [sic] transferable by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note, bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than 8% per annum; provided such obligation shall not bear more than 8% per annum after maturity until paid.’
“In discussing the law generally with reference to recovery of interest where the amount provided for was usurious, the Supreme Court in the Osborne case made the following observation:
“ ‘An examination of the Louisiana statutes reveals that under the provisions of Act No. 291 of 1855[,] if a *13 contract was usurious, the penalty was that of forfeiture of the entire interest. The Court of Appeal, on rehearing’, in Clark v. Harvey, 1912, 9 Orleans App. 277, 278 stated: “Act No. 291 of 1855, amending Article 2924, R.C.C. provides that the amount of [the] conventional interest should not exceed 8% under pain of forfeiture of the entire interest.
“ ‘ “But Act No. 68 of 1908, amending the same article and practically redrafting it, omitted the penalty of the Act of 1855, and contains a repeal of all conflicting legislation.
“ ‘ “This amendment took the place of the pre-existing article, which thereupon ceased to exist and became suspended by the amendment * * *.
“ ‘ “We think the rate of interest properly reducable [sic] to the highest rate allowed for conventional interest by our statute.”
“From a reading of the codal article, and particularly by reason of the fact[s] herein stated, the rate of interest of 10% should be reduced to 8%, the highest rate of conventional interest allowable under Louisiana law.’
“Under the authority of the [sic] Osborne and Article 2824 of the Revised Civil Code, this Court believes that the 12% per cent [sic] interest provided for in the note should in fact be and under the law must necessarily be reduced to 8%. This Court believes that the former penalty for usurious interest of forfeiture of the entire interest has been removed from the law with the possible exception of banking institutions. Article 2924, in its present form excludes banking institutions.” (Written Reasons for Judgment, Record, pp. 21, 22)
Appellants contend, however, that the Osborne case is erroneous, citing as authority for this propositon Meadow Brook National Bank v. Recile, 302 F.Supp.62 (United States District Court, E.D. Louisiana, 1969). We feel the exegetical study by the Court in Recile, reproduced below, clearly demonstrates that the principle enunciated by Osborne and relied on by plaintiff and the trial court is erroneous:
“Having concluded that the note is usurious and that the defendants are not barred from asserting this defense, we must determine the effect of usury. Plaintiff argues that when a note is usurious, the interest should be reduced to the maximum allowed by law^ — eight per cent. It cites three cases for this principle. Osborne v. Mossler Acceptance Co., 214 La. 503, 38 So.2d 151 (La.1948); Williams v. Halsmith, 17 La.Ann. 200 (La.1856); Clark v. Harvey, 9 Orl.App. 275, 277 (La.App.1912). The cases cited by the plaintiff clearly support its position. However, from a study of the history of the Louisiana law of usury, we are convinced that those cases do not correctly state the law.
“The pertinent history commences in the year 1844 when the Louisiana legislature amended the Civil Code as follows:
“ ‘Section 1. Be it enacted by the Senate and House of Representatives of the State of Louisiana, in General Assembly convened, That article two thousand eight hundred and ninety-five of the Civil Code of Louisiana, [now Article 2924], be amended that the amount of conventional interest shall in no case exceed eight per cent, under pain of forfeiture of the entire interest so contracted.’ Acts of 1844, No. 25.
“This was the first legislative enactment, as far as we know, regarding the effect of usury. The Louisiana Supreme Court interpreted this statute to mean that the entire contractual interest was forfeited and not merely the usurious portion. Merville v. Villeneuve LeBlanc, Jr. & Co., 12 La. *14 Ann. 221 (La.1857); Payne & Harrison v. Waterston, 16 La.Ann. 239 (La.1861).10
“10. Both of these cases were decided under the Act of 1844.” [Footnote by the United States District Court]
The Act of 1844 was reenacted in 1855 in practically identical language:
“ ‘Sec. 2. Be it further enacted, etc., That Article two thousand eight hundred and ninety-five of the Civil Code shall be so amended that the amount of conventional interest shall in no case exceed eight per cent, under pain of forfeiture of the entire interest so contracted.’ Acts of 1855, No. 291.
“Thus, the 1855 Act left unchanged the effect of usury under the 1844 Act.
“In the following year, Act No. 161 of 1856, quoted supra, was enacted. The Louisiana Supreme Court first came to grips with the meaning of the 1856 Act in Crane v. Beatty, 15 La.Ann. 329 (La.1860). In considering the effect of the 1856 Act on the Act of 1855, the court stated:
“ ‘After mature consideration, the majority of this court came to the conclusion, that the Above Act of the Legislature [Act of 1856] does not affect, in the case at bar, the Act approved March 15th, 1855, p. 352, entitled “An Act to regulate the rates of interest,” which latter Act must control the decision of the present action. The Act of March 20,1856, had in view the sale of notes and other written obligations, their discount or sale, for the purpose of raising money, and nothing more.

“ ‘The penalty of the Act of 1855 is a forfeiture of the entire interest contracted for.’ At 329-330.
“Thus rejecting the argument that the Act of 1856 abrogated the Act of 1855 as to the effect of usury, the court disallowed the entire interest on the usurious note. The Louisiana Supreme Court adhered to this decision in Campbell & Strong v. Hilliard, 15 La.Ann. 537 (La.1860), and again disallowed the entire interest on usurious notes. Beatty was again reaffirmed by the Supreme Court of Louisiana in Weaver v. Maillot, 15 La.Ann. 395 (La.1860). Then in 1865 the Louisiana Supreme Court decided the case of Williams v. Halsmith, 17 La.Ann. 200 (La.1865), one of the cases relied upon by the plaintiff. Relying solely on the Act of 1856, the Halsmith court disallowed only the amount of interest in excess of eight per cent. The court cited no other authority for its decision. It clearly overlooked the Beatty, Strong and Weaver decisions. Moreover, it did not even mention the Act of 1855. Halsmith is clearly a maverick decison. It has been totally ignored by every subsequent decision on the subject; shepardizing Halsmith reveals that it has only been cited once and that was merely in a passing remark by the court in Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65 (La.1960). Moreover, subsequent decisions by the Louisiana Supreme Court, ignoring Hal-smith, reaffirmed Beatty and disallowed all contractual interest on usurious notes. Tarver v. Winn, 18 La.Ann. 557 (La.1866); Succession of Rhoton, 34 La.Ann. 893 (La.1882) ; Martin v. Lake, 37 La.Ann. 763 (La.1885) (dicta). At this point in time it was clear that the effect of a usurious note was the forfeiture of the entire contractual interest.
“In the meanwhile, the Civil Code was revised in 1870. The provision regarding the forfeiture of the entire interest was omitted from the Civil Code of 1870. It was, however, included in the 1870 codification of the Revised Statutes as section 1884. In 1908 Article 2924 was reenacted and amended in two respects, neither one relating to the effect of usury. The prescriptive period for suits to recover usurious interest was changed from twelve months to two years; and the following rule of evidence was added:
“ ‘Provided however where usury is a defense to a suit on a promissory note *15 or other contract of similar character, that it is permissible for the defendant to show said usury whether same was given by way of discount or otherwise, by any competent evidence.’ Acts of 1908, No. 68.
“The Act of 1908 also contained the usual provision repealing all laws in conflict therewith.
“Four years later the Orleans Court of Appeals, believing that the Act of 1855 was in conflict with the Act of 1908, and therefore repealed by the latter Act, held that the proper penalty for charging usurious interest was a reduction of the conventional interest to eight per cent as the maximum allowed by the law. Clark v. Harvey, 9 Orl.App. 275, 277 (La.App.1912). Taken in historical context, this decision was clearly erroneous. Had there been any inconsistency in the various provisions, the courts would have been unable to give effect to all of them even prior to the Act of 1908. Yet prior to that time the courts had consistently given effect to each of the various provisions. Indeed, it had even been expressly stated that the provision for the forfeiture of the entire interest was entirely consistent with the provisions relating to the maximum rate of interest and the exceptions thereto. E. g., Succession of Rhoton, 34 La.Ann. 893 (La. 1882); John Chaffe & Sons v. Heyner, 31 La.Ann. 594 (La.1879), (dissenting opinion of J. Marr at 606). Moreover, it is typical for the legislature to include such a repealing provision, e. g., Acts of 1860, No. 62, and yet prior to Clark it had never been held that the repealing provision of the various enactments on usury constituted a repeal of the forfeiture provisions. If the Act of 1855 survived the Act of 1856 and the Act of 1860 authorizing commercial discounting and loan discounting respectively, it surely could not be inconsistent with the Act of 1908 which merely altered the prescriptive period and established a rule of evidence relating to the proof of usury. Finally, and perhaps most simply illustrating the error of Clark, is the fact that the provision for the forfeiture of th,e entire interest was carried forward from the Louisiana Revised Statutes of 1870, section 1884, and recodified in the 1950 revision of the Louisiana Revised Statutes. La.Stat. Ann. 9:3501. It reads as follows:
“ ‘Any contract for the payment of interest in excess of that authorized by law shall result in the forfeiture of the entire interest so contracted.’
“The recodification of this statute in the 1950 Revised Statutes unequivocably demonstrates the error of Clark. The Act of 1908 simply did not repeal the Act of 1855.
“The only decision citing Clark is the Louisiana Supreme Court decision in Osborne v. Mossler Acceptance Co., 214 La.503, 38 So.2d 151 (La.1948), which is the final case relied upon by the plaintiff. Relying solely and entirely on the decision in Clark, the Osborne court stated that the effect of usury is to reduce the interest to the maximum conventional interest of eight per cent. An examination of that opinion, however, reveals that the defense of usury was not even presented as an issue to the court. Presumably then, it was never briefed for the court by the attorneys. The court raised the issue sua sponte through questioning on oral argument. Moreover, the decision was rendered two years prior to the recodification of the Louisiana Revised Statutes in 1950 which clearly shows the Clark decision to be wrong. Under these circumstances we do not believe the Osborne decision changed the law of Louisiana; it merely compounded the error wrought by Clark. The only decision citing Osborne as authority for the issue in question is Vosbein v. Leopold, 230 La. 21, 87 So.2d 715 (La.1956). Although Vosbein was decided subsequent to the recodification of the Louisiana Revised Statutes in 1950, it did not even mention La.Stat.Ann. 9:3501; instead it relied solely on the Osborne decision. Thus, Vosbein, like Osborne, is merely a perpetuation of the original error of Clark. We do not believe the Supreme Court of Louisiana could adhere to the Clark decision at this time *16 if it were given the opportunity to pass on the clear meaning of La.Stat.Ann. 9:3501 in light of that section’s long history.
“We think the error of Clark is further demonstrated by the fact that all of the decisions of the Louisiana courts, other than Osborne and Vosbein, subsequent to Clark hold that the effect of usury is the forfeiture of the entire contractual interest. Green v. Johnson, 14 La.App. 110, 129 So. 384 (La.App.1930); W. W. Page & Son v. Russell, 7 La.App.129 (La.App.1927); Sherer-Gillett Co. v. Bennett, 5 Pelt.Orl.App. 649 (La.App.1922). Moreover, the decisions which have considered La.Stat.Ann. 9:3501 since its recodification in 1950 have adhered to the position that it requires the forfeiture of the entire contractual interest on usurious obligations. Lawrence v. Durr, 195 So.2d 337 (La.App.1967); Clasen v. Excel Finance Causeway, Inc., 170 So.2d 924 (La.App.1965), writ ref. 247 La. 619, 172 So.2d 702; Berger v. DeSalvo, 156 So.2d 323 (La.App.1963), writ ref. 245 La. 86, 157 So.2d 231. Finally, in this connection, we think it is clear that if the Louisiana Supreme Court were to interpret La.Stat.Ann. 9:3501, it would have no alternative but to hold that it requires the forfeiture of the entire contractual interest. In its most recent decision touching in this area, the Louisiana Supreme Court recognized that the Act of 1855 required the forfeiture of the entire interest on a usurious contract. Mayfield v. Nunn, 239 La. 1021, 121 So.2d 65, 69, n.5 (La.1960). The language of La.Stat.Ann. 9:3501 is identical to that in the Act of 1855 in that it requires the ‘forfeiture of the entire interest so contracted.’ Thus, this most recent expression of the Louisiana Supreme Court on the meaning of the Act of 1855, which expression is consistent with all of the decisions interpreting that Act[11] is equally applicable to the meaning of La.Stat.Ann. 9:3501 since the language of the two provisions are identical.” [Meadow Brook National Bank v. Recile, 302 F.Supp. 62, 81-84 (United States District Court, E.D.Louisiana, 1969)]
Plaintiff argues, however, that appellants, as endorsers of the note made by the corporation, are not entitled to raise the defense of usury, inasmuch as this defense is unavailable to a corporation by virtue of LSA:R.S. 12:703 and is likewise unavailable to endorsers of a corporate note, plaintiff citing as authority for this contention Meadow Brook National Bank v. Massengill, 285 F.Supp. 55 (United States District Court, E.D.Louisiana, 1968). This same contention was properly disposed of by the Federal District Court in Meadow Brook National Bank v. Recile, supra, in the following manner:
“Plaintiff contends that the defendant endorsers who are liable in solido with the corporate maker on the note in question are barred from raising the defense of usury by virtue of L.R.S. 12:603 which provides:
“ ‘Notwithstanding any other provision of the laws of this state to the contrary, any domestic or foreign corporation organized for profit may agree to pay any rate of interest in excess of the maximum rate of conventional interest authorized by law, and as to any such agreement, the claim or defense of usury, or of the taking of interest in excess of the maximum rate of conventional interest, by such corporation, is prohibited.’
“This statute was enacted in 1965 and has not yet been subjected to the crucible of judicial interpretation by the Louisiana state courts. The issue then, a highly important one, is res nova in Louisiana.
“The plaintiff relies upon decisions from several other jurisdictions. Those decisions establish the principle that, when a corporation is barred from asserting the defense of usury by a statute similar to the one above, the individual endorsers, guarantors, or sureties of a corporate note or obligation may not raise the defense of *17 usury.9 [Footnote by the Court and citations omitted] A rationale advanced in support of the rule is that such a person has not been, to adopt an apt expression, ‘usurized’ since he did not borrow the money. The corporation is the borrower and the individual surety has merely guaranteed the payment of the corporate obligation; therefore, it is assumed that he was not the unwitting nor the defenseless victim of financial duress. Hence, the policy supporting the usury laws is not violated if the individual endorser, who is not a victimized borrower, is forced to pay the full amount of the usurious corporate note. We question the validity of this rationale. We think that the policy supporting the usury laws is equally applicable in the case of an individual endorser on a corporate note as in the case of an individual maker. The above justification for denying the defense of usury to individual endorsers on a corporate note assumes that the usury laws exist to protect only the unsophisticated or defenseless borrower. We do not agree. The usury laws apply to all individuals, regardless of their sophistication or circumstances. Certainly, then, the basic legal policy underlying the usury laws is to prevent the personal financial ruin of individuals through excessive rates of interest. This policy is equally frustrated when an individual is called upon to pay his own usurious loan as when he is called upon to pay the usurious loan of a corporation. Cf., Lesser v. Strubbe, 39 N.J. 90, 187 A.2d 705 (N.J.1963) (Dissenting Opinion). Moreover, we do not think the rule furthers the legal policy underlying the disallowance of usury as a defense to corporations. The basic justifications for disallowing the defense of usury to corporations are three. Corporations are thought to have greater bargaining power than individuals. Corporate owners are protected by their limited liability. Finally, it promotes commerce; a corporation borrows to engage in a profitable business venture rather than to avoid financial ruin, and in a capitalistic society it should be free to pay whatever is necessary to attract the necessary capital. E. g., ‘Usury and Conflicts,’ 50 Cal.L.Rev. 123, 208-209 (1967). As far as these generalizations are true, we posit no quarrel with the legislative policy exempting corporate borrowers from the protection of the usury laws. Essentially, the defense of usury is barred to corporations because the danger of personal financial ruin is nonexistent. Yet a very real danger of personal financial ruin does exist as to the individual endorsers of the corporate obligation. To permit such endorsers to plead usury as a defense does no violence to the legal policy prohibiting corporations from asserting the defense, and to deny the defense to individual endorsers truly frustrates the legal policy supporting the usury laws. Consequently, we would not extend the statute barring corporations from raising the defense of usury beyond that which its policy justifies at the expense of the policy underlying the usury laws, unless, of course, we were compelled to do so by the force of precedent.
“The great number of New York decisions establishing the so-called New York rule and the handful of decisions from other states adopting that rule is, of course, highly persuasive authority for the plaintiff’s position. No decision to the contrary has been cited to us nor have we found one through our own research. As we have already indicated, however, we entertain grave doubts as to the wisdom of that rule. Our task, though, is not to blindly follow the New York decisions, nor even to fashion what we consider to be the better rule. Erie bound, we must endeavor to do as a Louisiana court would do if faced with this question novel to Louisiana. The question is actually one of legislative intent. The defendants direct their argument precisely to this point.
“The defendants urge us to consider an amendment to the bill before it was enacted into law as evidencing the legislative intent. As originally presented to the Senate, Section 1 of Senate Bill 33 read as follows:
*18 “‘AN ACT
“ ‘To amend Title 12 of the Louisiana Revised Statutes of 1950 to add thereto a new Section, to be designated as Section 603 of Title 12, relative to interest rates chargeable to corporations, those persons bound in solido with such corporations, or its successors, guarantors, sureties, assigns, and anyone acting on its behalf.
“ ‘Be it enacted by the Legislature of Louisiana:
“ ‘Section 1. Section 603 of Title 12 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows :
“ ‘§ 603. Rate of interest paid by corporations
“ ‘Notwithstanding any other provision of the laws of this state to the contrary, any domestic or foreign corporation organized for profit may agree to pay any rate of interest in excess of the maximum rate of conventional interest authorized by law, and as to any such agreement, the claim or defense of usury, or of the taking of interest in excess of the maximum rate of conventional interest, by such corporation [those persons bound in soli-do with such corporation, or its successors, guarantors, sureties, assigns, and anyone on its behalf] is prohibited.’ The italicized portion of this bill in brackets was later deleted by an amendment. The deleted portion would have clearly barred individual endorsers liable in solido with the corporate maker of a note from asserting the defense of usury. By deliberately deleting that portion of the bill, the legislature made clear its intent, the defendants argue, that it did not wish to bar individuals from asserting the defense of usury even on a corporate note. The plaintiff argues that the provision was deleted because the legislature was aware of the decisions cited above, and therefore it was merely deleting that which was unnecessary. We find the logic of the. defendants’ argument compelling. Prior to the enactment of this statute, no party to a note, whether it was an individual or a corporation, was barred by Louisiana law from asserting the defense of usury regardless of whether it was a corporate or an individual note. The Louisiana legislature has now declared that a corporate maker of a note may not assert the defense of usury. The question is whether it intended to abrogate the former law in any respect other than this. We do not think it did; otherwise, why would it have deliberately deleted the clause which would have clearly established its intention ? The clause was in the bill as originally drafted. The legislature deliberately struck it from the bill. The only logical conclusion we can draw is that the Louisiana legislature did not intend to modify the existing law in any other respect and did not intend to preclude individual endorsers of corporate notes from raising the defense of usury. The plaintiff’s argument would carry more weight if the provision had never been incorporated into the bill, but because it was included and was deliberately deleted, we conclude that the legislature did not intend to bar individual endorsers of a corporate note from raising the defense of usury.
“Moreover, our ultimate conclusion is further compelled by Article 2098 of the Louisiana Civil Code which provides:
“ ‘A codebtor in solido, being sued by the creditor, may plead all the exceptions resulting from the nature of the obligation, and all such as are personal to himself, as well as such as are common to all the codebtors.’
“This article clearly allows the defendants, who are liable in solido on the corporate note, to plead usury as a defense. It can hardly be denied that usury goes to the nature of the obligation. La.Stat.Ann. 12:603 does not say that a note made by a corporation with interest at a rate in excess of the maximum rate of conventional interest authorized by law is not usurious. It merely says that a corporation may not *19 assert the defense of usury. While we have found no decisions under Article 2098 regarding usury, usury is surely a defense resulting from the nature of the obligation. Under Article 3060 of the Louisiana Civil Code, a surety may plead all exceptions which are ’inherent to the debt.’ Huntington v. Westerfield, 2 Or.App. 405 (1905), held that usury was ‘inherent to the debt.’ A fortiori usury goes to the nature of the obligation. Thus, even if we were unable to ascertain the legislative intent of La. Stat.Ann. 12:603, we would be unable to follow the decisions from other jurisdictions relied upon by the plaintiff because of Article 2098 which is binding upon us.
“We are not unaware of the statement in Meadow Brook National Bank v. Massengill, 285 F.Supp. 55 (E.D.La.1968), that individual endorsers who are bound in solido on a promissory note with the corporate maker are precluded from asserting the defense of usury by virtue of the provisions of La.Stat.Ann. 12:603. That statement, however, was purely dictum inasmuch as the court concluded that the note in question was not usurious. Moreover, no Louisiana decisions were cited as authority for that statement. It was supported only by some of the decisions from other jurisdictions cited above. Further, we have no indication that the legislative history of La.Stat.Ann. 12:603 was presented to the court for its consideration in that case as it was here. Finally, it does not appear that the court was asked to pass on the meaning of Article 2098 of the Louisiana Civil Code as we have been asked to do. For these reasons we do not feel constrained to adhere to the dictum in the Massengill decision.” [Meadow Brook National Bank v. Recile, 302 F.Supp. 62, 78-81 (United States District Court, E.D. Louisiana, 1969)]
This Court is satisfied that appellants may assert the defense of usury on their individual behalf even though they are endorsers of the usurious corporate note. We are unable, however, to subscribe to the proposition stated by the United States District Court in Recile that Louisiana Revised Statute 9:3501 requires forfeiture of all interest where the interest rate is usurious, even though the usurious interest was paid by the corporate maker of the note, which interest payments were valid and enforceable by virtue of Louisiana Revised Statute 12:703. In Recile, the Federal District Court credited interest payments made by the corporation to the principal, thereby reducing the principal balance for which the creditor could hold the individual endorsers liable. The effect of this rule is to penalize the creditor by denying the creditor all interest on the loan and permitting the creditor to recover only the principal amount of the loan, even though the interest contracted and paid by the corporation was perfectly valid under R.S. 12:703. The unfair effect of this Recile rule is demonstrated by the following example: A creditor loans a corporation the principal sum of one million dollars, which corporate note is endorsed by an individual. The corporation remains solvent for a period of five years during which time it utilizes the creditor’s funds and makes payments on the loan of $400,000 interest and $100,000 on the principal. Thereafter, the corporation defaults on the note and the creditor sues the individual endorser. Under Recile, although the corporation had use of the creditor’s one million dollars for five years and made interest payments of $400,000 at a rate of interest in excess of eight percent and therefore usurious if paid by an individual but perfectly valid insofar as a corporation is concerned under R.S. 12:703, nevertheless, the individual endorser would be entitled to have the $400,000 of interest payments credited to the principal, with the result that the creditor could only hold the endorser liable for $500,000. This penalizes the creditor by denying it any return on its one million dollar investment for a period of five years even though the interest contracted and paid by the corporation was valid and enforceable.
We feel the better rule is to hold the individual endorser liable for the actual *20 outstanding principal balance without reducing same by the amount of interest paid by the corporation. This result gives effect both to R.S. 9:3501 and R.S. 12:703. The unpaid principal balance owed by the individual endorser or endorsers, bears legal interest from the date this debt becomes due, Louisiana Civil Code Article 1938, or in this case from date of default.
For the foregoing reasons, the judgment of the trial court is amended and recast so as to read as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Rosenthal and Rosen-thal, Inc., and against the defendants, Thomas R. Pruyn and C. S. Pruyn, Jr., in solido, in the full sum of $29,583.15, with legal interest thereon at the rate of 5 percent per annum from September 26, 1967, until paid, plus 15 percent attorney’s fees on the total amount of principal due and owing, subject to a credit of $1,922.72 paid on December 13, 1967. Defendants are taxed with all costs of the proceedings in the trial court. Costs of this appeal are to be borne one half by plaintiff and one half by defendants-appellants.”
Amended and as amended, affirmed.

. This date in the judgment is no doubt erroneous since it reflects payment resulting from the seizure and sale prior to the last monthly payment made by the corporation on September 26, 1967. The affidavit attached to plaintiff’s motion for summary judgment reflects this credit of $1,922.72 to have been paid on December 13, 1967. (Record, p. 13)

. Salsmith did not even mention the Act of 1855. [Footnote by the United States District Court]