COVINGTON, Judge:
The plaintiff, George M. Paulat, has brought suit on two promissory notes against the defendant, Jasper Pirello, seeking a judgment for $13,975.35, together with annual interest at 8%, and 10% of both principal and interest as attorney’s fees, and all costs. The defendant filed an answer and reconventional demand in which he disputed the balance due, averred that he had offered the actual balance owed, therefore no attorney’s fees are owed, asserted the defense of usury, and prayed for judgment in the sum of $19,800.00 as the return of usurious interest collected since 1964.
After trial, the trial court rejected the defendant’s contention that the transactions were usurious, and rendered judgment on December 9, 1975, in favor of the plaintiff in the sum of $6,683.51, plus 8% interest thereon from maturity, or November 15, 1972, until paid, plus an additional 10% on both principal and interest as attorney’s fees; and for $7,291.84, plus 8% interest thereon from maturity, or July 28, 1972, until paid, less a credit of $16.20,[1] plus an additional 10% on both principal and interest as attorney’s fees; the defendant was cast for all costs. The defendant has appealed devolutively from this judgment. We amend and affirm.
The evidence shows that in November, 1964, the defendant borrowed from the plaintiff the sum of $10,000.00, represented by a promissory note due six months after date. The note was executed for the amount of $10,900.00, it being agreed that $900.00 was capitalized interest. Thereafter, at approximately six-month intervals, the defendant paid $900.00, and executed new six-month’s notes for $10,900.00. In August, 1968, the entire indebtedness was paid, and the collateral mortgage securing the indebtedness was cancelled. This transaction was a separate, independent transaction from the two promissory notes which are the subject of the present lawsuit, but was part of a series of dealings between the parties.
On October 1, 1968, the defendant executed another collateral mortgage. Then, on November 15, 1968, he signed a promissory note for $10,900.00, representing a loan of $10,000.00. On May 26,1969, the defendant paid $900.00, and executed a new note for $10,900.00, which was dated May 15, 1969, to coincide with the due date of the previous loan, and due on November 15, 1969, which note is one of the notes sued on herein. Thereafter, at approximately six-month intervals, payments of $900.00 were made, but no new notes were executed.
On January 28, 1969, Pirello executed an additional collateral mortgage. On July 28, 1969, he borrowed an additional $10,000.00 from the plaintiff and signed a promissory note for $10,900.00 due in six months, and *529 which is the second note sued on herein. At approximately six-months’ intervals thereafter the defendant made $900.00 payments, which the plaintiff credited to interest on his accounting records. No new notes were executed by the defendant.
The trial court found, according to the copies of checks stipulated into evidence, that Pirello had made the following payments:
May 26, 1969 $900.00
September 5, 1S6S 900.00
December 5, 1969 900.00
February 5, 1969 [2] 900.00
June 5, 1970 900.00
August 24, 1970 900.00
December, 1970 900.00
February 3, 1971 900.00
June 5, 1971 900.00
September 5, 1971 900.00
November 29, 1971 900.00
February 8, 1972 16.20
The trial court also found that Paulat admitted receiving the following payments: Note dated May 15, 1969:
June (due November) 15, 1969 $900.00
May 15, 1970 900.00
November 15, 1970 900.00
May 15, 1971 900.00
November 15, 1971 900.00
May 15, 1972 900.00
November 15, 1972 900.00
Note dated July 28, 1969:
J anuary 28, 1970 $900.00
July 28 1970 900.00
January 28, 1971 900.00
July 28, 1971 900.00
January 28, 1972 900.00
July 28, 1972 900.00
As can be seen, the dates are inconsistent, but, as noted by the trial court, this inconsistency is explained by the fact that Paulat simply credited payments received on the due date rather than on the date the payments were actually received. The trial court also noted that the defendant was credited with more payments than he proved.
The defendant-appellant’s primary defense is usury, based on: 1) The plaintiff’s failure to obtain renewal notes at each extension transformed the transaction into a usurious one by continuing to collect the interest at the annualized rate of 18%; 2) a promissory note which includes both capitalized interest and interest at the rate of 8% per annum from maturity results in collecting duplicate interest on the maturity date so as to constitute a usurious transaction; and 3) the taking of interest upon interest is usurious.
On appeal, Paulat argues that the entire transaction between him and Pirello was made usurious by the failure to obtain the aforesaid renewal notes and by Paulat’s entering the $900.00 payments as interest on his account records.
The record reflects that both parties intended that the notes be short-term, single-payment notes designed to yield 18% annual capitalized interest, and bear 8% interest from maturity. It was also intended that in the event the loan was not paid at the end of the six-month term, the interest would be paid and a new note issued. The record also shows that new notes were not executed. However, in each instance, both parties acted as though a new note was issued, Pirello continued to pay the $900.00 as interest, and Paulat continued to treat the payments as interest.
The record establishes that the defendant has borrowed the sum of $20,000.00 from the plaintiff on two occasions. He has had the use of that money over an extended period of time. He does not deny owing the amount borrowed, less certain credits. However, he takes the position that because of the way the payments were credited, and because a new note was not issued at each extension, laws prohibiting usury relieve him of any obligation of paying all interest, i.e., paying for the use of the borrowed money.
Defendant’s position is without merit. There was no contract for interest in excess of the lawful rate of interest so as to cause a forfeiture of all interest as required by LSA-R.S. 9:3501. The contracts for interest in the instant case, the two notes sued upon, on their face show a capitalized interest and a lawful interest from maturity. They do not violate our usury laws.
*530 The penalty inflicted upon the lender is one, which the plaintiff here did assume, of having to reallocate the payments made on the basis of 8% simple interest from date as required by the notes sued upon.
The law permits the recovery of capitalized interest included within the face amount of a note, provided such obligation does not bear annual interest at more than 8% after maturity until paid. LSA-C.C. art. 2924.
LSA-C.C. art. 2924 provides, in part, as follows:
“The owner of any promissory note, bond or other written evidence of debt for the payment of money to order of bearer or transferable by assignment shall have the right to collect the whole amount of such promissory note, bond or other written evidence of debt for the payment of money, notwithstanding such promissory note, bond or other written evidence of debt for the payment of money may include a greater rate of interest or discount than eight per cent per annum; provided such obligation shall not bear more than eight per cent per annum after maturity until paid . . . .”
Almost identical language has been used in this article since its first enactment by Act 161 of 1856. The purpose of this article was to authorize the “capitalizing of interest.”
In General Securities Co., Inc. v. Jumonville, 216 La. 681, 44 So.2d 702 (1950), the Supreme Court was called upon to decide whether or not a note which had been discounted at 11% of its face value and which provided for 8% interest from maturity was usurious. The court held that the note came within the exception of article 2924, and that since it did not bear interest at more than 8% after maturity it did not carry usurious interest.[3]
Appellee relies primarily upon three cases, i.e., Thrift Funds of Baton Rouge, Inc. v. Jones, 274 So.2d 150 (La.1973), Grunewald v. Bartholomew, 269 So.2d 274 (La.App. 4 Cir. 1974), and Rosenthal and Rosenthal v. Houma Town House Apartments, Inc., et al., 238 So.2d 9 (La.App. 1 Cir. 1970). These are distinguishable on factual bases.
In Thrift Funds, the court found that the note carried usurious interest although the note bore interest at 8% per annum from maturity, because the loan agreement also provided “default charges, late charges and additional fees.” Late payments were claimed on 23 out of 28 monthly installments; consequently, the court determined that the total of the capitalized interest, the interest at 8%, the late payment charges, default charges, etc., constituted interest on interest.
In Grünewald, the note in question was made payable to order of bearer on demand, with interest at the rate of 8% per annum from maturity until paid. No demand was made on the maker for payment until more than one year after date and the court found, contrary to plaintiff’s testimony, that there had been no agreement between the parties to a one-year maturity of the note. However, the court correctly stated the general rule that:
“Under LSA-C.C. Art. 2924, which provides inter alia that the conventional interest involved herein cannot exceed 8% per annum, our jurisprudence consistently and uniformly has been to the effect that the holder of a promissory note may collect its face value despite the fact that a portion of the face amount represents capitalized interest in excess of the 8% per annum legal rate, provided the instrument does not additionally call for more than 8% annual interest after maturity; under such circumstances, even if the capitalized interest, as annualized, represents more than 8% per annum, the note is nonetheless not usurious.” (footnote omitted)
And further that:
*531 “Usury is determinable from the face of the instrument, from the time that interest is due on its face and not from the time when payment of interest may be demanded.”
The law has been correctly stated in Grunewald v. Bartholomew, supra, that “usury is determinable from the face of the instrument.” See also 91 C.J.S. verbo Usury, § 61 p. 642:
“A contract not tainted with usury in its inception will not be affected by subsequent usurious transactions in connection therewith, such as payments on account of interest in excess of the legal rate, or contracts to make such payments, although such illegal payments or contracts to pay may well be usurious and void or unenforceable in themselves.”
The appellant cites Rosenthal and Rosenthal, Inc. v. Houma Town House Apartments, Inc., supra. It is inapposite. In that case, the loan agreement provided for 36 monthly installments, plus interest at the rate of 12% per annum from date until the maturity of each installment, and additionally, for interest at the rate of 2% per month from maturity of each installment until paid. The court held that the loan agreement provided for more than 8% interest from maturity and was thus usurious.
Under the provisions of LSA-C.C. art. 2924, where interest in excess of the lawful maximum rate is capitalized into the note, such act presents an exception to the general rules against usury. See International Harvester Credit Corporation v. McGill, 297 So.2d 272 (La.App. 3 Cir. 1974), writ den. 300 So.2d 841.
We have reviewed the record in this case, and agree with the trial court’s finding that the notes are not usurious on their faces, and that proper reallocation of the payments to principal and interest was demanded and made prior to the lender’s filing of the instant action.
It was clearly the intention of the parties that the notes were short-term, single-payment notes calculated to yield 18% per an-num capitalized interest and bear 8% interest from maturity until paid.
It was also understood by the parties that in the event the loan was not liquidated at the end of the six-month term, the interest would be paid, the original note cancelled and a new note issued as had been done in the past by the parties. The record is also clear that this was not done. The reason for this was stated by Mr. Paulat:
“We had discussed it with him numerous times and he wasn’t ready to pay off the whole obligation.”

“We were suppose to do that each time, but I was unable to get Mr. Pirello to do it, but I thought we more or less had a verbal understanding that — I would rather be paid, but he indicated that he was going to pay. He had to pay the whole thing. He had various times. He was going to pay before the six month period, but it never did materialize. So it ended up as an extension.”
And, in answer to the Trial Judge’s question:
“Did you ask him to make a new hand note?”
Mr. Paulat replied:
“I think we both understood and Mr. Major explained that in the office to us, that in the event it was extended to do it legally right, it should be renewed each time. Well, I neglected to do it. I asked him to do it, but he failed to come into my office, which was in my home, and most of my contact with him after that was on the telephone or I would go to his office occasionally. And he would mail me checks or he would send his son over there with checks. So he wasn’t there to — and I think we had a — we both understood exactly what the interest was.”
Pirello testified as follows:
“Q. What was your understanding with Mr. Paulat as to the term of this particular borrowing? Did you have any arrangements as to how long the loan term would run?
A. Well, we made — -in the beginning we made a six month note and in *532 terest was $900.00 per six months. And that I would be given the opportunity, if need be, to renew it. And all we did was send in the $900.00 or had it by mail or sent it out to him. I don’t think or recall that there was any definite understanding as to time of payment. Of course it was assumed that it was a six month note. Every six months I should have paid something on the principal or — paid the interest or possibly something on the principal, but I was never in a position to do that." (Emphasis added)
Paulat testified about his accounting practices as follows:
“Q. Now, in connection with your own internal procedure for recording payments in handling this debt, I also understand from you that these notes were retained in your residence. You kept them at home; is that not right?
A. Yes sir, I did.
Q. As opposed to generally placing an installment obligation with the Fidelity Bank for collection.
A. That’s right because this was suppose to be one short term transaction would finalize it. So due to that reason I kept it home. In fact it was the only ones I ever kept there.”
And with reference to the ledger sheets and a discrepancy between the dates on the interest checks and dates where payments were credited, Mr. Paulat testified as follows:
“Q. Now, does the date of payments reflected on your ledger sheets on E-4 and E-5 indicate the correct dates that the payments were made?
A. No, sir. Like I said before, in virtually all instances it was — I got a postdated check or — I got nothing unless I reminded him of it most of the time and then it took, a lot of times, considerable time before I could get those checks cashed. But, just to simplify the record, I credited it at the time it was due. It may be one, two or more months later than the time it was due. That was more the rule, the way it was.”
We hold that there was no usurious interest exacted by virtue of a contractual arrangement within the meaning of LSA-R.S. 9:3501 so as to require the forfeiture of all interest under the contract. The notes in the instant suit, not carrying usurious interest, do not inflict forfeiture of interest on the lender; he need only reallocate the payments properly to principal and interest as the appellee had done prior to filing suit.
The next argument of the appellant, that usury has been proved from the use of the word “from” rather than the word “after” on the note in the fixing of interest at 8% from maturity, is without merit. This same contention was made in the case of Williams v. Alphonse Mortgage Co., 144 So.2d 600 (La.App. 4 Cir. 1962), and decided adversely to appellant’s position.
In Williams, the court observed:
“Nor do we find any merit in the distinction attempted to be drawn between interest payable ‘from maturity’ and interest payable ‘after maturity’. Appellant contends that a distinction could result in the imposition of interest for one additional day. The words ‘from’ and ‘after,’ as [they] relate to the payment of interest, appear, thus, to be synonymous.”
We agree with the Williams court. The distinction sought to be made between “from” and “after”, while ingenious, may not be entirely ingenuous, and has no place in this case. The words, in the sense of article 2924 of the Civil Code, are synonymous.
We now turn to the question of the payments of $16.20 and $12.90. Although the checks have the notations of being the interest on $900.00 for a few days, this can not be made the basis of a claim for usury. There is no merit in the defendant’s contention that these payments are in violation of LSA-C.C. art. 1939, providing that “Interest upon interest cannot be recovered .” The evidence establishes that Paulat simply *533 failed to credit these two payments correctly to Pirello due to “the creditor’s accounting method of rudimentary quality,” as the trial court found. The trial court’s judgment is amended to give Pirello credit for the additional payment of $12.90.
For these reasons, the judgment of the trial court is amended and affirmed at appellant’s costs.
AMENDED AND AFFIRMED.

. It is undisputed that an additional payment, in the amount of $12.90, was made by the defendant. This was proved by a joint offering and acknowledged in the plaintiffs testimony. However, through evident inadvertence, the trial court failed to include it in the judgment.

. This should read 1970.

. See International Harvester Credit Corporation v. McGill, 297 So.2d 272 (La.App. 3 Cir. 1974), writ den. La., 300 So.2d 841.